U. P. R. R. Co. v. Buffalo County.

THE UNION PACIFIC RAILROAD COMPANY v. THE BOARD OF COUNTY COMMISSIONERS OF BUFFALO COUNTY, THE COUNTY CLERK AND COUNTY TREASURER OF SAID COUNTY.

1. **Taxes:** SINKING FUND: LEVY OF TAXES. The county commissioners of B. county, after the exhaustion of the levy in the years 1876 and 1877, allowed claims against the county to the amount of $22000.00 and issued certificates of indebtedness therefor, and levied a sinking fund tax of five mills on the dollar valuation for their payment. *Held*, that the tax was illegal and void.

2. ———: ———. A "sinking fund tax" is a tax raised to be applied to the payment of the interest and principal of a *public loan*, and it cannot under the statute be levied for the payment of floating indebtedness.

ORIGINAL application for an injunction.

*A. J. Poppleton*, for plaintiff.

*Hamer & Conner*, for defendant.

MAXWELL, CH. J.

This is an action to restrain the collection of a sinking fund tax of five mills on the dollar valuation in Buffalo county.

The petition alleges that during the years 1876 and 1877 the county commissioners of said county, after the entire levy for each respective year had been exhausted, audited and allowed a large number of accounts or claims against the county, chargeable against the various funds, amounting in the aggregate to the sum of $22000.00, and the county clerk of said county issued his certificate of such auditing and allowance. A copy of one of the certificates is attached to the petition, and is as follows:

"$160.64. KEARNEY, NEB., January 20, 1877·

"*This is to certify* that the claim of V. B. Clark

31

against Buffalo county, Nebraska, for $160^{64}\frac{}{100}$ dollars, dated December 2, 1876, and filed in this office December 4th, 1876, has been endorsed by the county commissioners for $160^{64}\frac{}{100}$ dollars to be paid in a warrant drawn on its proper fund as soon as the next levy therefor is made.                    " SIMON C. AYER,

" No. 500.                                " County Clerk.

"Allowed Dec. 4th, 1876. [SEAL]."

The petition also alleges that among the taxes levied July 7th, 1878, by said commissioners is a tax designated as " county sinking fund" tax of five mills on the dollar valuation of the property of said county, and that said tax was levied to pay the certificates of indebtedness above described; that on the second day of July, 1878, the board of county commissioners ordered twenty-five per cent of said certificates to be paid by warrants drawn on the county sinking fund of said county, and that the same be paid equally to the holders of said certificates; that warrants for a large amount were drawn upon said sinking fund, and there now remains in the treasury of said county the sum of $3849.47; that on the fifth day of May, 1879, said board of county commissioners ordered the county clerk of said county to draw warrants upon the county treasurer of said county for all moneys in the county sinking fund of said county *pro rata* on all outstanding certificates or audited accounts against Buffalo county, except those for rebate of taxes; that said clerk has not drawn said warrants, but said order still remains in full force and effect; that there now stands wrongfully charged on the tax rolls of said county against the property of the plaintiff, for the county sinking fund of 1878, the sum of $2572.69, which tax is now due and payable; that plaintiff has paid all legal taxes levied and charged against the property of the plaintiff, etc.

The defendants in their answer allege that said sink-

ing fund tax was levied as provided in section 2, page 45, laws of 1877, and for the purpose of paying one year's interest on all the outstanding warrants of Buffalo county, and five per cent of the principal thereof; they deny that said tax was levied to pay audited accounts' or certificates of indebtedness, but that after it was levied it was determined by said board to pay *pro rata* said audited accounts or certificates of indebtedness; that warrants to the amount of $24,222.15, with interest thereon from the first day of November, 1875, were outstanding and unpaid at the time of the levy of said sinking fund tax; they deny that said commissioners ordered the payment of twenty-five per cent of said certificates or audited accounts, etc.

The testimony consists of copies of the orders of the commissioners for the payment of twenty-five per cent of said certificates out of said sinking fund.

There is but one question presented by the record, viz.: the authority of the county commissioners to levy a sinking fund tax for the payment of audited accounts.

Section 24, chap. 13, General Statutes, 236, provides that "it shall not be lawful for any warrants to be issued for any amount exceeding in the aggregate the amount levied by tax for the current year."*

Section 25 provides that "in order to guard against any such overdraft, each warrant shall express plainly on its face the amount levied for the current year' and the amount already expended."

Section 26 provides that "Any warrant drawn after the amount levied for the year is exhausted, shall not be chargeable as against the county, but may be collected by civil action from the county commissioners making the same, or either of them."

Section 27 requires the board to make out and pub-

*NOTE.—See this section now amended, Laws 1879, p. 365.

lish yearly, in at least one newspaper in the county, if such there be, a report of the receipts and expenditures of the year next preceding, and the amounts allowed on each separate fund, and a detailed statement showing the resources and liabilities of the county at the end of each year. If there is no paper published in the county, then such statement is to be posted up in five public places in the county.

These provisions prohibit absolutely the commissioners from drawing warrants in excess of the aggregate amount levied by tax for the current year. The manifest object of the statute is to compel county commissioners to administer county affairs with economy. They have no authority to issue certificates of indebtedness after the exhaustion of the levy. A warrant in fact is a mere certificate of indebtedness although negotiable in form, as it does not partake of the character of negotiable paper so far as to estop the county from availing itself of any defense it may have against it, even in the hands of a *bona fide* purchaser for value without notice. *School District v. Stough*, 4 Neb., 359. In case of a deficit in the county revenue to meet the current expenses of the county, the statute authorizes the commissioners to submit to the people of the county, at any regular or special election, the question of borrowing a sufficient sum of money for that purpose upon the credit of the county. (Gen. Stat., 235.)* They have no authority to levy taxes for any purpose unless authorized by statute. The whole course of the legislation of this state has been to restrict and limit within proper bounds the power to contract municipal indebtedness, and as far as possible protect tax payers and *bona fide* creditors of the county from the evils on one hand of reckless expenditure, and on the other of de-

*Note.—See Laws 1879, pp. 361, 363.

preciated credit; but if, when the levy is exhausted, the commissioners can continue to issue certificates of indebtedness, and then levy a sinking fund tax for the payment of the same, there would practically be no limitation upon their power to contract debts; but such is not the law.

A sinking fund is defined to be a fund arising from particular taxes, imposts, or duties, which is appropriated toward the payment of the interest due on a *public loan* and for the payment of the principal. 2 Bouvier's Law Dict., 524. No one will contend that indebtedness against the county in the form of accounts audited and allowed can be designated a public loan. Ordinarily such accounts can be paid out of the ordinary levy, but when this cannot be done, the only remedy is that provided in the statute, by submitting a proposition to the people of the county for authority to borrow the necessary funds.

Section 2 of the act to amend the revenue law, approved February 19, 1877 (Laws 1877, p. 45), which provides for a sinking fund to pay all the outstanding debts of a county, does not apply to merely audited claims, but is restricted to the funded debt, nor does the act, approved February 17, 1877 (Laws 1877, p. 219), " to provide for the funding of the warrants and outstanding indebtedness of counties," authorize the levy of a sinking fund tax to pay the floating indebtedness of a county. The plaintiff having paid all taxes legally assessed against its property in Buffalo county, and the sinking fund tax being levied without authority of law, the injunction heretofore granted is made perpetual.

JUDGMENT ACCORDINGLY.