THE BURLINGTON AND MISSOURI RIVER RAILROAD COMPANY IN NEBRASKA, APPELLANT, V. KEARNEY COUNTY, APPELLEE.

1. **Petition Defective:** FILING ANSWER NO WAIVER. When the facts stated in a petition do not constitute a cause of action the filing of an answer is not a waiver of that defect. *O'Donohue v. Hendrix*, 13 Neb., 256.

2. ———. If a petition fails to state a cause of action it will not support a judgment.

3. ———: OMISSIONS: PRESUMPTION. Where there is an omission to state a material fact in a petition, one necessary to show a cause of action, the presumption is that it does not exist. *B. & M. R. R. Co. v. York County*, 7 Neb., 487.

4. ———: CASE EXAMINED. Petition examined, and found not to state a cause of action.

APPEAL from Kearney county. Heard below before GASLIN, J.

*Marquett & Deweese,* for appellant.

*J. M. Stewart, A. J. Poppleton,* and *Harwood, Ames & Kelly,* for appellee.

REESE, J.

This action was brought to restrain the collection of certain taxes levied by the commissioners of Kearney county upon the property of the plaintiff for the year 1879. It is claimed that the taxes in question are illegal for want of authority on the part of, the commissioners to levy them. Upon the trial of the cause in the district court a part of the relief prayed for was granted and the injunction made perpetual as to that part. But a part being refused and the injunction dissolved as to the part so refused, the plain-tiff appeals.

By the brief of counsel for defendant it is strongly insisted that plaintiff has received all the relief to which it is entitled under the allegations of its amended petition, and that no cause of action is stated for any further relief. If this be true, it would serve no good purpose to examine the questions presented by the briefs and arguments of counsel upon the other features discussed by them.

Ths allegations of the petition may be briefly but fairly stated as follows: That it is a corporation duly organized under the laws of the state, and is the owner of the property (land) described in the schedule attached, and which was assessed for the year 1879, at the sum of $31,179. That it is also the owner of a railroad running through the county of Kearney for a distance of $14\frac{68}{100}$ miles, which was assessed by the state board of equalization for said year at the sum of $8,032 per mile. That on the 7th day of July of that year the board of county commissioners made the following levies of taxes:

*For State Purposes—*

General fund, 4 mills on the dollar.

Sinking fund, $\frac{5}{8}$ of one mill on the dollar.

School fund, 1 mill on the dollar.

University fund, $\frac{3}{8}$ of one mill on the dollar.

*For County Purposes—*

General fund, 10 mills on the dollar.

Sinking fund, 31 mills on the dollar.

Bridge fund, 2 mills on the dollar.

Court-house fund, 7 mills on the dollar.

School purposes, upon the property of school district number one, 30 mills on the dollar.

The recitals copied from the county commissioners' record of the levy show that the question of levying the tax known as court-house tax was by the direction of a vote of the people of the county at an election held on the 31st day of May, of the year 1879, upon a proposition submitting the question of raising by taxation and appropriating the sum of $2,247 to aid in the construction of a court-house at Minden.

With reference to the school district tax, the petition alleges that the " board had no authority to levy for school purposes a tax in excess of twenty-five mills on the dollar valuation."

It is further alleged that the taxes levied for county purposes aggregated fifty mills on the dollar valuation, and that at the time of making the levy, " there were outstanding, as plaintiff has been informed and verily believes, indebtedness against said county (amounting to) seventy-four thousand dollars, of which fifteen thousand dollars were debts contracted and obligations incurred since the first day of November, 1875, for the payment of none of which the commissioners were authorized to levy a sinking fund. That all of said levies for county purposes were made by said commissioners of said county and by no other person or corporation, and that of said levy of fifty mills at least

33

thirty mills was excessive and more than said commissioners were authorized to levy. The said levy of fifty mills on dollar valuation on the property of said county were not made for the purpose of paying any indebtedness which accrued prior to November 1st, 1875."

"Plaintiff, therefore, under the advice of counsel, submits that the said levies so made and referred to were made without authority of law and are void. That said commissioners had no power or authority to levy said tax for said purpose, and that the same are in contravention of the constitution and the statutes of the state of Nebraska, and are in excess of the amount that the board of county commissioners are authorized to levy."

It is further alleged that as against the lands described in the petition, there is charged for the year 1879, taxes amounting to $2,137 and that of that amount at least $935.37 is in excess of the amount of taxes which should be charged against said lands, and which was so charged and levied without any authority. That against the railroad there is charged for the year 1879 taxes amounting to the sum of $8,767.56, of which amount at least the sum of $3,617.61 is in excess of the legal amount which should have been so charged, and is in excess of the amount authorized to be levied in accordance with the statutes and constitution of the state. That on the 28th day of April, 1880, the plaintiff tendered and paid to the county treasurer $5,804.24 and on the 20th day of October, 1880, it tendered and paid $573.23, which included interest, and which was more than the amount of legal taxes justly due from the plaintiff for said year 1879.

It is further stated that plaintiff is entitled to the relief demanded, which consists in restraining defendant from collecting the excessive taxes; that unless defendant is restrained the treasurer will proceed to sell the property of plaintiff and issue certificates and deeds to the purchasers, which will create a cloud upon its title, etc. Prayer for injunction in the usual form.

The answer is a general denial. Upon trial the court found that the tax in school district number one was excessive, and reduced it to twenty-five mills; holding with the plaintiff that all over that amount should be enjoined. This being the case no further notice need be taken of the school tax. The court also found that two mills of the court-house tax was excessive and void, and the injunction as to that was made perpetual.

If the facts stated in the petition do not constitute a cause of action the filing of an answer does not waive such defect. *O'Donohue v. Hendrix*, 13 Neb., 255. Neither are any defects in the substance of the petition cured by the answer (*Haggard v. Wallen*, 6 Neb., 272), if such defects exist, as the answer contains no affirmative allegations.

If the petition fails to state a cause of action it will not support a judgment. *Thompson v. Stetson*, 15 Neb., 112.

The petition, then, must stand unaided by any other pleading or proceeding in the case, and to it alone our attention must be directed.

It is alleged that the outstanding indebtedness of the county at the time of the levy was $74,000, but of which $15,000 were debts contracted and obligations incurred since the 1st day of November, 1875. It appears, then, that the restriction of section five of the article of the constitution on revenue and finance, by which the levy is restricted to "one and a half dollars per one hundred dollars valuation" has no reference to $59,000 of this indebtedness. Neither does this limitation apply to indebtedness contracted after the first day of November, 1875, if the tax is authorized by a vote of the people of the county. There is no allegation anywhere in the petition that the levy to pay the $15,000 of indebtedness referred to was not by the authority of a vote of the people. If such were the case, the interest at least of the whole of the $74,000 indebtedness referred to should be paid by the levy of the proper tax, and if any part of said indebted-

ness was due such part should also be provided for by tax-
ation.    The petition is silent as to these particulars, and it
must be construed against the pleader to the extent that
where there is an omission to state material facts the pre-
sumption is that such facts do not exist.    *B. & M. R. R.
Co. v. Lancaster County*, 4 Neb., 307.    *Same v. York
County*, 7 Id., 493.    *School District No. 16 v. School
District No. 9*, 12 Id., 242.    It is true it is alleged that
the commissioners were not authorized to levy a sinking
fund tax for the payment of any of this debt, but that
allegation is not enough.    No reason is alleged why this
authority did not exist, and as we have seen, the presump-
tion is, that no reason existed.    If it was a bonded debt
the fund was properly denominated a sinking fund.    *U.
P. R. R. Co. v. Buffalo County*, 9 Neb., 453.    *Same v.
Dawson Co.*, 12 Id., 256.    The debt is not attacked by
any allegation which would tend to question its validity.
The presumption is the debt was a just and valid one.    If
so, the usual way of paying such is by taxation.

It is alleged that "of the levy of fifty mills at least
thirty mills was excessive, and more than the commissioners
were authorized to levy," and that the levy of fifty mills
was not made for the purpose of paying any indebtedness
which accrued prior to November 5, 1875.    As the fifty
mills was the whole tax levied, this allegation would seem
to be at least *modified* by the allegation of the $74,000
indebtedness.    But be that as it may, the validity of a part
of the tax is conceded and no reason is given why the
thirty mills referred to is void or illegal.    Nor what part
of the tax is sought to be attacked.    The allegation "under
advice of counsel" that the levies were made without au-
thority of law, and are void, and that the commissioners
had no authority to levy a tax "for said purpose," cannot
aid the matter.    It is the opinion of the writer that the
taxes necessary to pay indebtedness existing before the 1st
day of November, 1875, and the taxes necessary to pay

indebtedness contracted since that time, when authorized by a vote of the people, are not to be considered in connection with the limitation of the constitution above referred to. However that may be, it is very clear that no such facts are shown as would lead to the suggestion that the taxes were unlawful were it not for the statement of the conclusions of the pleader. Much is said in the briefs concerning certain funding bonds of the county, but we look in vain for any reference to them in the petition. These funding bonds are spoken of in the brief as issued "by special act of March 3, 1873." The petition alleges "that the said levy of fifty mills on the dollar valuation on the property of said county were not made for the purpose of paying any indebtedness which accrued prior to November 1, 1875." The petition evidently does not refer to any such bonds.

From a very careful examination of the petition we are wholly unable to see that the plaintiff is entitled to any further relief than was afforded by the district court. Eliminating the five mill school tax and possibly the two mills court-house tax, which were held illegal by the district court, and the petition was clearly obnoxious to a general demurrer, and had the district court granted the full relief prayed for it would have been error.

The decree of the district court must therefore be affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.